### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------

SHIVA STEIN,                                      :
                                                  :
        Plaintiff,                    :   Civil Action No. _____
                                                  :
v.                                                :   **COMPLAINT FOR VIOLATIONS OF**
                                                  :   **SECTIONS 14(a) AND 20(a) OF THE**
DIME COMMUNITY BANCSHARES, INC.,                  :   **SECURITIES EXCHANGE ACT OF**
VINCENT F. PALAGIANO, MICHAEL P.                  :   **1934**
DEVINE, KENNETH J. MAHON,                         :
ROSEMARIE CHEN, STEVEN D. COHN,                   :   **JURY TRIAL DEMANDED**
PATRICK E. CURTIN, KATHLEEN M.                    :
NELSON, JOSEPH J. PERRY, KEVIN STEIN,             :
BARBARA G. KOSTER,                                :
                                                  :
        Defendants.                   :
---------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Dime Community Bancshares, Inc., ("Dime or the "Company") and the members Dime's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Dime and Bridge Bancorp and its affiliates ("Bridge Bancorp").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on September 14, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Dime will merge with and into Bridge Bancorp, with Bridge Bancorp as the surviving corporation operating under the name "Dime Community Bancshares, Inc." Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Dime stockholder will receive 0.648 Bridge Bancorp shares (the "Merger Consideration").

3.      As discussed below, Defendants have asked Dime's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Dime's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Dime is headquartered in this District and where a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Dime stock and has held such stock since prior to the wrongs complained of herein.

10.    Individual Defendant Vincent F. Palagiano has served as a member of the Board and Chairman since the Company's formation in 1995.

11.    Individual Defendant Michael P. Devine has served as a member of the Board since 1995 and Vice Chairman of the Board since February 2014.

12.    Individual Defendant Kenneth J. Mahon has served as a member of the Board since 2002 and was appointed President and Chief Executive Officer of the Company effective January 1, 2017.

13.    Individual Defendant Rosemarie Chen has served as a member of the Board since September 2017.

3

14.     Individual Defendant Steven D. Cohn has served as a member of the Board since 1995.

15.     Individual Defendant Patrick E. Curtin has served as a member of the Board since 1995.

16.     Individual Defendant Kathleen M. Nelson has served as a member of the Board since March 2011 and was elected Lead Director in January 2017.

17.     Individual Defendant Joseph J. Perry has served as a member of the Board since December 2005.

18.     Individual Defendant Kevin Stein has served as a member of the Board since December 2017.

19.     Individual Defendant Barbara G. Koster has served as a member of the Board since September 2018.

20.     Defendant Dime a Delaware corporation and maintains its principal offices at 300 Cadman Plaza West, 8th Floor, Brooklyn, New York 11201.  The Company's stock trades on the NASDAQ Stock Exchange under the symbol "DCOM."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

23.     Dime operates as the holding company for Dime Community Bank that provides commercial banking and financial services in New York. It offers deposit products, such as savings, money market, and interest bearing and non-interest-bearing checking accounts, as well

as certificates of deposit. The Company also offers residential and commercial real estate loans; commercial and industrial loans, such as lines of credit, revolving lines of credit, and term loans; one-to-four family residential and condominium/cooperative apartment loans; home equity and home improvement loans; equity lines of credit; acquisition, land development, and construction loans; small business administration loans; finance loans; and consumer loans. In addition, it manages and owns real estate; and invests in multifamily residential and commercial real estate loans, commercial and industrial loans, and one-to-four family residential real estate loans, as well as mortgage-backed securities. As of April 23, 2020, the Company had 28 branches located throughout Brooklyn, Queens, the Bronx, Nassau, and Suffolk counties, New York.  Dime was founded in 1864 and is headquartered in Brooklyn, New York.

24.     On July 1, 2020, the Company and Bridge Bancorp jointly announced the Proposed Transaction:

> BRIDGEHAMPTON, N.Y. and BROOKLYN, N.Y., July 01, 2020 (GLOBE NEWSWIRE) -- Bridge Bancorp, Inc. (Nasdaq: BDGE) ("Bridge"), the parent company of BNB Bank, and Dime Community Bancshares, Inc. (Nasdaq: DCOM) ("Dime"), the parent company of Dime Community Bank, today announced that they have entered into a definitive merger agreement pursuant to which the companies will combine in an all-stock merger of equals transaction, valued at approximately $489 million.  The merger combines two complementary banking platforms to create a premier community-based business bank.  The combined company will have over $11 billion in assets, over $8 billion in total deposits, and 66 branches spanning Montauk to Manhattan.
>
> "This highly compelling combination will allow us to build on our complementary strengths and provide significant value for shareholders," said Kevin O'Connor, President and Chief Executive Officer of Bridge Bancorp. "Dime has earned its strong reputation in the greater New York metropolitan market, and I'm thrilled to partner with them.  Our enhanced branch footprint and increased capital base will allow us to better serve the needs of our customers. In addition, both companies have strong balance sheets and demonstrated histories of low loan losses through prior cycles,

which give me confidence that we will be well-positioned to succeed in any environment. I look forward to working closely with Ken and the entire Dime team as we collectively become New York's premier community bank."

Kenneth J. Mahon, Chief Executive Officer of Dime, commented, "Prior to the onset of our commercial bank transformation four years ago, Dime was a monoline, multifamily thrift lender. This merger is the next logical step in Dime's journey and significantly accelerates our business model transformation. Bridge and Dime are two of the most highly acclaimed and respected franchises in the New York market. Both of us weathered the financial crisis of 2008 with among the lowest loss rates in the entire country. We believe the capital strength of the combined company, Bridge's high-quality deposit base, and Dime's historically strong New York City multifamily loan portfolio, will result in the creation of a solid balance sheet. In Bridge, we have aligned ourselves with a company that has a well-constructed commercial bank balance sheet, shares our values, our community focus, and our commitment to building and retaining highly-talented staffs. I believe that in CEO Kevin O'Connor and President and Chief Operating Officer Stuart Lubow we have the right team to carry on each bank's standalone reputation for customer service, employee engagement and financial performance. We expect our shareholders to benefit from owning a stronger, more attractive, and more formidable competitor in the New York market."

**Strategic Benefits to the Merger**

Enhances Scale and Builds Upon Complementary Strengths: The combined company will be strategically positioned to have enhanced scale with expected improved opportunities for growth and profitability.  Bridge has a deep history in C&I, commercial real estate, and small business lending, while Dime has been a leading player in low-LTV New York multifamily lending. The combination fortifies complementary commercial and retail banking business lines.

Creates a Bank with Dominant Market Share: The combined company will have a highly complementary branch network with limited existing customer overlap, and will be well positioned to increase market share from regional and money-center banks. Its enhanced branch footprint and increased capital base will allow the combined company to serve the needs of small-to-mid-sized businesses.  The combined company will have a deep commitment

to and extensive skillset in SBA-lending, which is anticipated to be an active business line in the current environment.

Prospects to Accelerate Shareholder Value Creation:  Pro forma calculations with respect to the combined company indicate GAAP EPS accretion of 7% to Bridge and 40% to Dime. The transaction is approximately 0.4% accretive to Bridge's Tangible Book Value. Management believes that conservative and achievable cost savings, projected to be approximately 15% of the combined expense base, will drive strong financial metrics, material capital generation and tangible book value per share growth.

**Transaction Details**

Under the terms of the merger agreement, which was unanimously approved by the boards of directors of both companies, Dime will merge with and into Bridge, with Bridge as the surviving corporation, and Dime Community Bank will merge with and into BNB Bank, with BNB Bank as the surviving institution. Following the closing of the transaction, Dime shareholders will receive 0.6480 shares of Bridge common stock for each share of Dime common stock they own.  Each outstanding share of Dime's 5.50% Fixed-Rate Non-Cumulative Perpetual Preferred Stock, Series A will be converted into the right to receive one share of a newly created series of preferred stock of Bridge with the same preferences and rights.  Upon completion of the transaction, which is subject to both Dime and Bridge shareholder approval, Dime shareholders will own approximately 52% and Bridge shareholders will own approximately 48% of the combined company.

**Name, Branding and Headquarters**

The combined company will operate under the "Dime Community Bancshares, Inc." name and the combined bank will operate under the "Dime Community Bank" name.  Leveraging Dime's ubiquitous brand name and having branch network coverage over the entire Long Island market provide the combined entity significant branding power.

Certain retail locations in eastern Long Island will operate under the BNB Bank name for at least one year.

The headquarters of the combined company will be located in Hauppauge, New York, with a corporate office to be located in New York, New York.

The combined company will trade under the Dime ticker symbol "DCOM" on The Nasdaq Stock Market.

**Governance and Leadership**

The combined company's board of directors will have twelve directors, consisting of six directors from Bridge and six directors from Dime.

- Kenneth J. Mahon, the current Chief Executive Officer of Dime, will serve as Executive Chairman of the combined company
- Marcia Hefter, the current Chairwoman of Bridge's board of directors, will serve as the independent Lead Director of the combined company

The combined company will be led by a well-respected management team that is comprised of individuals with significant financial services and M&A integration experience.

- Kevin O'Connor, the current President and Chief Executive Officer of Bridge, will serve as Chief Executive Officer
- Stuart "Stu" H. Lubow, the current President of Dime, will serve as President and Chief Operating Officer
- John McCaffery, the current Chief Financial Officer of Bridge, will serve as Senior Executive Vice President and Chief Risk Officer
- Avinash "Avi" Reddy, the current Senior Executive Vice President and Chief Financial Officer of Dime, will serve as Senior Executive Vice President and Chief Financial Officer

**Timing and Approvals**

The merger is expected to close in the first quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

**Advisors**

Piper Sandler Companies is acting as financial advisor, and has rendered a fairness opinion to the board of directors of Bridge. Luse Gorman, PC is serving as legal counsel to Bridge. Raymond James is acting as financial advisor, and has rendered a fairness

opinion to the board of directors of Dime.  Holland & Knight LLP
is serving as legal counsel to Dime.

\* \* \*

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Dime's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Registration Statement**

26.     On September 14, 2020, Dime and Bridge Bancorp jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Registration Statement omits material information regarding Dime and Bridge Bancorp's financial projections, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of Dime, and to help stockholders better understand the analyses performed by Raymond James and Piper Sandler & Co., Bridge Bancorp's financial advisor ("Piper Sandler").

28.     With respect to the financial projections provided by Bridge and Dime management and relied upon by Piper Sandler for purposes of its analyses, the Registration Statement fails to disclose (i) total assets; (ii) loans/deposits; (iii) nonperforming assets/total assets; (iv) tangible common equity/tangible assets; (v) Tier 1 Leverage Ratio; (vi) Total Risk-Based Capital Ratio; (vii) CRE/Total Risk-Based Capital Ratio; (viii) LTM Return on Average Assets; (ix) LTM Return on Average Equity; (x) LTM Net Interest Margin; (xi) LTM Efficiency Ratio; (xii) Price/Tangible Book Value; (xiii) Price/LTM Earnings per share; (xiv) Price/2020E Earnings per Share; (xv) Price/2021E Earnings per Share; (xvi) Current Dividend Yield; and (xvii) Market Value.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to Raymond James' *Contribution Analysis*, the Registration Statement fails to disclose the following for Dime and Bridge Bancorp:  (i) estimated 2020 net income; (ii) estimated 2021 net income; (iii) total assets; (iv) gross loans; (v) total deposits; (vi) non-interest bearing deposits; (vii) tangible common equity; and (viii) last twelve months core net income.

30.     With respect to Raymond James' *Discounted Cash Flow Analysis* for Dime and Bridge Bancorp, the Registration Statement fails to disclose: (i) estimated calendar year 2025 earnings; (ii) estimated terminal values for Dime and Bridge Bancorp in 2024; (iii) the inputs and assumptions underlying the use of the discount rates of 9.5% to 12.75%.

31.     With respect to Raymond James' *Selected Companies Analysis*, the Registration Statement fails to disclose the following multiples for each of the comparable companies as part of its analysis: (i) basic tangible book value per share at March 31, 2020 as shown by S&P

Global Market Intelligence; (ii) last twelve months core earnings per share; (iii) next fiscal year earnings per share.

32.     With respect to Raymond James' *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the use of the discount rates of 9.00% to 12.00%; (ii) the present value of the estimated excess cash flows that the pro forma resulting company could generate over the period from July 1, 2020 through December 31, 2024; (iii) the present value of the pro forma resulting company's implied terminal value at the end of such period, in each case applying the estimated Pro Forma Financial Adjustments; (iv) the basis for assuming that the pro forma resulting company would maintain a tangible common equity to tangible assets ratio of 8.00% and would retain sufficient earnings to maintain that level; (v) the basis for applying a range of 11.0x to 13.0x to the pro forma resulting company's estimated 2025 earnings.

33.     With respect to Raymond James' *Financial Impact Analysis*, the Registration Statement fails to disclose the specific pro forma assumptions including, (i) the cost savings expected to result from the merger and (ii) purchase accounting adjustments.

34.     With respect to Piper Sandler' *Comparable Companies Analysis* for Bridge Bancorp, the Registration Statement fails to disclose the following multiples for each of the comparable companies in the Bridge Peer Group and the Dime Peer Group selected by Piper Sandler as part of its analysis: (i) total assets; (ii) loans/deposits; (iii) nonperforming assets/total assets; (iv) tangible common equity/tangible assets; (v) Tier 1 Leverage Ratio; (vi) Total Risk-Based Capital Ratio; (vii) CRE/Total Risk-Based Capital Ratio; (viii) LTM Return on Average Assets; (ix) LTM Return on Average Equity; (x) LTM Net Interest Margin; (xi) LTM Efficiency Ratio; (xii) Price/Tangible Book Value; (xiii) Price/LTM Earnings per share; (xiv) Price/2020E

Earnings per Share; (xv) Price/2021E Earnings per Share; (xvi) Current Dividend Yield; and (xvii) Market Value.

35.     With respect to Piper Sandler's *Net Present Value Analysis* for Bridge; the Registration Statement fails to disclose the inputs and assumptions used by Piper Sandler to derive the range of discount rates of 8.0% to 13.0%, price to 2024 earnings multiples ranging from 8.0x to 15.5x, and multiples of December 31, 2024 tangible book value ranging from 75% to 150% used in its analysis.

36.     With respect to Piper Sandler's *Net Present Value Analysis* for Dime; the Registration Statement fails to disclose the inputs and assumptions used by Piper Sandler to derive the range of discount rates of 8.0% to 13.0%, price to 2024 earnings multiples ranging from 8.0x to 15.5x, and multiples of December 31, 2024 tangible book value ranging from 75% to 150% used in its analysis.

37.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial analyses that were prepared by financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the

Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     The Individual Defendants acted as controlling persons of Dime within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Dime, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Dime, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Dime, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

48.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 16, 2020                    **WOLF HALDENSTEIN ADLER**
                                             **FREEMAN & HERZ LLP**

                            By:   */s/ Gloria Kui Melwani*
                                  Gloria Kui Melwani (GM5661)
                                  270 Madison Avenue
                                  New York, NY 10016
                                  Telephone: (212) 545-4600
                                  Facsimile: (212) 686-0114
                                  Email: melwani@whafh.com

                                  *Attorneys for Plaintiff*

17